The next case is Sahin v. Bondi Mr. Sahin v. Bondi Mr. Sahin's right to examine evidence pursuant to Section 1240.10a.4 was violated when the I.G. gave him only five minutes to review 154 pages of evidence. But did he have it before? I'm sorry, Your Honor? Did he not have access to these country reports before that hearing? No, Your Honor. The government doesn't dispute in their brief, and the immigration judge operated under the assumption that he hadn't received the documents. When she directed the government to send the documents, she said to give him an opportunity to look at them for the first time. But they were delivered to the facility, and he said he never received them. Is that what the record reflects? Yes, Your Honor. And the second point is competency, but I'll begin with the first point. Section 1240.10a.4 requires I.G.s to provide noncitizens with a reasonable opportunity to examine evidence. Mr. Sahin was not afforded a reasonable opportunity, and that requires remand because of the rights— Does it require that the petitioner have a reasonable opportunity to examine evidence, or does it require that he be advised at the start of the proceedings that he has such a right? Your Honor, we believe that it requires both, and we can look to Montia v. INS. In Montia, this Court recognized that regulations protect more than their literal text. Montia dealt with an advisal regulation, the advisal of the right to counsel. This Court, in interpreting that regulation, what is now Section 1240.10a.1, said that it states a right to counsel and further requires advisal of that right. In saying this, this Court recognized that regulations operationalize statutory rights, that they restate the right and add procedural safeguards. I mean, help me understand the argument about Montia. I thought that was a little bit different there because the regulation required the I.J. inform the noncitizen of his right to an attorney and then get an answer with regard to that. Does that—so there really was noncompliance with the plain words of the regulation. Is that correct? Am I understanding that correctly? Yes, that's correct regarding the facts of Montia. But this Court, in interpreting the regulation, interpreted it very broadly, said that it states a right to counsel, recognizing both the underlying right and the procedural safeguard added on top of it. And the protection isn't limited to that extra procedural safeguard when the regulation is the agency's way of giving life to the statute. And that's reinforced by this Court in Waldron v. INS when it said that regulations—excuse me, that the Accardi doctrine in Montia apply even when regulations protect more than what is required by the statute or constitution. That necessarily implies that the protection occurs even when it mirrors the statute or constitution. How did your client—how was your client prejudiced by—I mean, I realize this is a 150-page report. He's given five minutes to review it. If he didn't have it before, that doesn't seem like enough time. But what is your argument about prejudice? Well, Your Honor, Montia doesn't require prejudice. And ultimately, for a regulatory violation, it doesn't require it for several reasons, the first being that if this Court were to require prejudice any time an individual is complaining of a regulatory violation, that would encourage noncompliance on behalf of the agency. That's what this Court said in Montia. Ultimately, Montia held that the harm when an agency violates a regulation is not just to the individual but to the system itself, that it leads to selective observance of regulations, inconsistent applications of law, and it undermines public trust. Remand is required because only when the agency follows its own procedure are they able to apply their expertise. I'd like to move on to the second issue. The immigration judge failed to assess Mr. Sahin's competency. Under a matter of MAM in this Court's decision in Reed v. Bondi, immigration judges are required to assess noncitizens' competency when they show an indicia of incompetence, and failure to do so invalidates the proceeding and requires remand. According to this Court, competency is present if and only if the noncitizen meets three requirements, that they, one, have an understanding of the nature and object of the proceedings, two, can consult with counsel, and three, have a reasonable opportunity to present evidence. Any indicia of incompetence triggers an I.J.'s duty to make a further inquiry. An indicia is broad. It can come from many sources, including testimony, medical records, or the noncitizen raising the issue of incompetence themselves, like in K.O.V. Garland and Reed v.— In what respect do you believe your client was incompetent? Your Honor, it's that third requirement for competency, that he didn't have an opportunity to present evidence in his case, and as he testified to, his cycle— What does that have to do with competence? Well, Your Honor, that's the definition of competency under a matter of MAM and endorsed by this Court in Reed v. Bondi, that they have a reasonable opportunity to present evidence. Ultimately, a matter of MAM drew from— What condition did your client experience or was laboring under that had that effect? Your Honor, as Mr. Sahin testified to in front of two different immigration judges, he suffered from PTSD, anxiety, and depression, and those conditions and the medication he was on for them impaired his ability to prepare evidence for his hearing. On June 6th, he told that to I.J. Connolly. On July 14th, he told that to I.J. Baumgarten. Two instances where he not only listed his medical illnesses and medication, but linked them to a core requirement of competency. Under a matter of MAM, when an I.J. hears a statement like that, they are required to pause and assess. A matter of MAM provides guidance on this. It requires I.J.s to take measures to assess competency, such as asking the noncitizen about the medication that they're on or requesting the parties to submit medical reports. Neither I.J. did that in this case. They didn't ask follow-up questions about the diagnoses that he mentioned, the medication that he said he was on, the purpose and effects that he explicitly mentioned. They moved on, not following the framework that is required by a matter of MAM. The only follow-up he got from either I.J. was from I.J. Baumgarten, who asked him, why is this the first time you're mentioning medication and it impairing your ability to present evidence? Well, first, I.J. Baumgarten was wrong on the facts, as he had mentioned it to I.J. Connolly a month prior. But second, and more importantly, that was a conscious decision from an immigration judge to ignore an indicia of incompetence by questioning Mr. Sahin's credibility, as opposed to assessing competence, which is required under a matter of MAM. And that failure very much mirrors the failure in K.O.V. Garland. Is there any other than his expression that I have suffered this trauma, I'm suffering from PTSD, and that he was on medication? Because it seems during the hearing he was doing a lot of other things that seemed to be indicia of active self-representation. Well, two points on that, Your Honor. First, the critical thing here that Mr. Sahin said, it wasn't just listing the diagnoses and medication, that he linked it to competency, and in part did some of the work for the I.J. Well, he was explaining why it was one of the reasons he gave where I have not assembled all my evidence. That's true, Your Honor. And that brings me to my second point. Excuse me. Indicia of incompetence is a trigger that requires an immigration judge to make further inquiries to ultimately weigh whether or not the noncitizen is competent or not. If the immigration judge ignored the indicia that Mr. Sahin raised because she thinks other reasons were accurate, that is the type of finding that occurs when the I.J. conducts a competency finding, and under matter of M, they're required to articulate both the decision and the reasoning. I see my time is up. May I briefly finish answering? Yes, please. Well, Your Honor, the government misstates the characterization of competency both as to scope and character. For scope, competency is required throughout the course of proceedings. It's not a static condition. So pointing to Mr. Sahin's ability to answer questions during his immigration hearing doesn't answer the question of whether or not he had the competency to present evidence for that hearing prior. And as to character, again, there's this broad definition of competency that goes to presenting evidence. So whether or not he understood questions or was able to make arguments is an opposite. Thank you, Your Honor. Thank you. And, Judge Cabranes, did you have anything further? No, that's fine. Thank you very much. Good morning, Your Honors. May it please the Court. Jessica Strokos on behalf of the United States Attorney General. To address the first point made by my colleague, and thanks to the Cornell Clinic for representing Mr. Sahin in this case, to that first point, Judge Livingston, you are correct. Montia is different from this case. In Montia, subsection A1 had two parts. It had the advisal and then the additional requirement that the immigration judge require the noncitizen to state affirmatively or negatively whether they wanted counsel. The immigration judge's failure in Montia to do so, to obtain that statement, as the regulation says then and there, this court in Montia found amounted to a violation of the regulation. Here, the text of the regulation at issue, subsection A4, is frankly just different. Subsection A4 requires an advisal. It requires nothing more. And the record plainly shows that that advisal was made. And, in fact, petitioners concede in their opening brief that that advisal was made. And so the argument about subsection A4 is frankly just controlled by the text of the regulation. And even if you get to that point of it, because it was unexhausted, this argument before the court, but even assuming exhaustion, the text controls. The text requires only an advisal, and the advisal was made. But isn't there, returning to the substance, isn't there a problem with providing five minutes to review a 150-page-plus document and then not inquiring after a short five-minute break as to whether you have anything to say about that document when you're dealing with an unrepresented person? Certainly, Your Honor. However, prior to that break and prior to Mr. Sahin even being provided the document, which I will confirm in the record, it does show that the service of the document was made, and it wasn't until his merits hearing that counsel, that the Department of Homeland Security and the immigration judge learned that he believed he had not actually seen the documents. They were served on the immigration court. When you say service, you mean service on the facility or to him personally? So I believe the service of the document would have been sent to him at the facility, and he stated that he had not seen the documents. So at that point, the immigration judge told the deportation officer that they would be printed and they were to be immediately provided to him so that he could review them. The immigration judge then asked, would you like me to consider these country reports in considering your case? And Mr. Sahin's response was yes. The immigration judge said, okay, I'll consider them. We'll still give you the opportunity to review them, but I will consider them if you want me to. That's what happened in this case. So now Mr. Sahin, through counsel, is complaining that he had insufficient time to consider reports that he asked the immigration judge to consider. That's essentially what happened here. Now, regarding his competency, first and foremost, noncitizens in immigration proceedings are presumed to be competent. Absent indicia of incompetency, the immigration judge has no requirement to inquire into an individual's competency. Well, he said PTSD, he was on medication, and so forth. Why wasn't that sufficient? Because diagnoses for mental health conditions, excuse me, sorry, because diagnoses for mental health conditions and the simple usage of medication to control those conditions is not per se indicia of incompetency. As my colleague stated, indicia of incompetency is very broad, and it considers whether, primarily whether, the individual understands the nature and object of the proceedings that are ongoing. Mr. Sahin, from the record, it's plain. He understood what was going on at all times. And I just want to point out that it is not the government's argument that competency is a static condition. Frankly, throughout every time that Mr. Sahin appeared before an immigration judge, he clearly understood why he was there, what was expected of him. He understood that he had the right to counsel, and he chose not to obtain counsel. He, in fact, he understood that he had the right to present evidence and that he sought and obtained a continuance of his requested continuance of more than a month after he explained that there was an earthquake in Turkey in February 2023. His friends and family at home were not in the mood to get documents for him. He was having difficulty himself obtaining documents because of the earthquake and the transfer of documents from one hospital to another or one police precinct to another. And he also, at that point, stated that he had been diagnosed with PTSD. But he was able to explain in this conversation with the immigration judge that he understood that he was expected to obtain documents to support his claim, what kinds of documents he needed to obtain, all of the steps he was taking to obtain them, and the purpose of what was going on, why he was there. And that is clear throughout the entire proceeding, all the way to when he made a closing argument. And he did something that many applicants, frankly, that are pro se cannot. He made a nexus argument in his closing statement. And that shows that he not only understood the nature and object of his proceedings, he understood the legal requirements for asylum in the United States. There was simply, under the unique and specific factual circumstances in this case, the immigration judge was not compelled to see any indicia of incompetency, notwithstanding his two statements that he had some mental health issues and was taking medication for his mental health. The rest of the circumstances surrounding those statements, and the purpose for which he made those statements, one being to seek a continuance based primarily on the earthquake, and the second to explain, in part, why he had not submitted evidence that he then stated that he had and simply chose not to submit. All of the circumstances showed that he understood the nature and object of his proceedings, that he understood that he could consult with an attorney or representative of his choosing, and that he had the opportunity to present evidence, and he had the opportunity to examine the evidence presented against him. The question of counsel, would you describe that procedure exactly? What were the circumstances under which he was informed or showed some knowledge of the fact that he had a right to counsel and elected not to seek counsel? Your Honor, I'm unable to point you to a direct passage in the record at this time because that simply has not come up as an issue in this case yet. However, I can speak to generally what occurs before an immigration judge is, particularly at the very first time that a noncitizen appears, they're given a series of advisals. The advisals in subsection 8 CFR 240.10a. And those advisals include that the individual is entitled to counsel, to obtain counsel at their own expense, and requires the immigration judge to ask each individual whether they would like to have a continuance to obtain counsel. At their own expense, is that right? I'm sorry? Did you say at their own expense? Correct, Your Honor. Because the right to counsel is not the Sixth Amendment right to counsel in criminal proceedings, it falls under the Due Process Clause of the Fifth Amendment. Individuals in immigration proceedings have a right to counsel, not counsel paid for by the government, counsel that they may obtain at their own expense or counsel that appear pro bono. And in many cases, an individual is provided a list of low or no-cost legal providers so that they can have counsel because it is to the benefit of all parties when an individual is represented, much like in this case with the Cornell Clinic stepping up to represent them. My memory, correct me if I'm misremembering the record, but he was interested in obtaining counsel because he contacted two, he was in touch with two different attorneys as the proceedings went on, is my memory. Yes, Your Honor. I believe that he stated that he had been in contact but had not been able to come to an agreement with the attorneys. I believe he also obtained counsel for purposes of his bond proceeding. However, that counsel never filed a notice of appearance in his separate immigration proceeding. As those proceedings are separate, there are separate requirements for counsel for each type of proceeding. So in conclusion, Your Honors, essentially Mr. Sahin asked this Court to establish a bright-line rule. If there is any evidence whatsoever that an individual has a mental health condition or is taking medication for a mental health condition, that's an issue that requires the additional step of a competency hearing. That simply is not the case. And for that reason, this Court should deny the petition for review. Two quick points on rebuttal, Your Honors. The government's reading of Montia is too narrow and would reduce advisal rights into empty formalities. Under the government's logic, an immigration judge could advise a noncitizen of a right and immediately turn around and deprive them of that right. And because an advisal had been given, there's no regulatory violation. Well, that would allow regulations to become performative and not protective, an approach that was rejected in Montia and by this Court ever since. In Montia, this Court didn't merely ask if the advisal or the second question of whether the Respondent would like counsel had been given. Instead, this Court investigated the purpose of the regulation, concluding that it was clearly designed to force confrontation with the choice of counsel and demanded strict compliance with that underlying purpose. Moving to the competency issue, the government conflates indicio with a competency finding. We're not asking this Court to find that Mr. Sahin was incompetent. Ultimately, that is a determination that must be made by the immigration judge that was there and followed the procedural framework that is articulated in Matter of MAM. To the extent that this Court raises a harmless error, excuse me, to the extent the government raises a harmless error analysis, that was explicitly foreclosed in Reed v. Bondi when this Court attached the Matter of MAM framework to Montia in holding that when regulations are violated, remand is required. And just to clarify the record and add some additional context, Mr. Sahin, when he appeared at his merits hearing, thought that counsel was going to be there and counsel had been telling him that we are going to help you submit documents. That's ultimately why when he showed up without the counsel there, he had no documents to submit, and that was something that he wasn't able to do himself as he told two different immigration judges because of his psychological issues, because of his medication, and the effects that it had on him. If there's no further questions, thank you, Your Honor. Thank you both. Thank you both, and we'll take the matter under advisement. And thanks in particular to the Cornell Clinic for the representation. Very well done, Mr. Siegel.